IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RICHARD GREIST,** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| | : | |
| v. | : | NO.   20-CV-5134 |
| | : | |
| **COMMISSIONER OF** | : | |
| **SOCIAL SECURITY,** | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                                              **May 25, 2023**

Plaintiff Richard Greist brought this action seeking review of the Acting Commissioner of Social Security Administration's (SSA) decision concluding that payment of his monthly Social Security Disability Insurance benefits should be suspended pursuant to 42 U.S.C. § 402(x)(1)(A)(ii). This matter is before me for disposition upon consent of the parties. For the reasons set forth below, Plaintiff's Request for Review[1] (ECF No. 27) is **DENIED**.

**I.      RELEVANT FACTS AND PROCEDURAL HISTORY**

The Acting Commissioner submits the following factual and procedural background, supported by citations to the administrative record and Plaintiff's prior relevant cases:[2]

---

[1] Plaintiff styled his Request for Review as a "Response" to the Court's January 13, 2022 Order directing him to file a Brief and Statement of Issues in Support of his Request for Review. (*See* Order, ECF No. 24).

[2] In his reply, Plaintiff provides a "limited stipulation" to the background recited by the Acting Commissioner. (Reply, ECF No. 33, at 3). He maintains that the Acting Commissioner's "references to hearing, appeals and federal cases" are irrelevant to the statutory issues in the case and "presented in an effort to instill a bias for unsupportable and ongoing criminality . . . ." (*Id.* at 3-4). However, he does not contend that any of the references are factually inaccurate. The Court considers this undisputed background only as such and does not take from it or intend to

In 1978, Greist killed his pregnant wife, removed the eye of his daughter, and stabbed his grandmother (Tr. 11, 58, 68). *See also In re R.G.*, 11 A.3d 513, (Pa. Super. Ct. 2010); *In re Richard Greist*, No. 1437 Philadelphia 1995, slip op. at 1 (Pa. Super. Ct. Apr. 26, 1996). After a 1980 bench trial, Greist was found not guilty by reason of insanity on one count of murder and two counts of attempted murder (Tr. 62, 68, 73, 78, 162). *Id.*; *see also In re Greist*, 636 A.2d 193, 194 (Pa. Super Ct. 1994).

Before finding Greist not guilty by reason of insanity, the Court of Common Pleas appointed a psychological expert to conduct an examination of Greist and render an opinion on the issue of Greist's criminal responsibility (Tr. 162). *Commonwealth v. Greist*, 29 Chester Co.Rep. 34 (Pa. Ct. Com. Pleas 1980). The court-appointed expert's opinion was consistent with Greist's expert – that Greist was legally insane (Tr. 162). *Id.* The court found that Greist offered "overwhelming evidence of his insanity under *M'Naughten*," the Commonwealth of Pennsylvania was unable to prove Greist's sanity beyond a reasonable doubt, and there was "clear and convincing evidence" that Greist was "legally insane under the law" (Tr. 162). *Id.* Based on these findings, the court ordered that Greist "was not criminally responsible for the commission of the crimes charged, a Verdict of acquittal is entered on all charges and the parties are directed to proceed in accordance with the relevant provision of the Mental Health Procedures Act" (Tr. 162). *Id.*

In connection with the court's order, Greist was then committed to the Norristown State Hospital under Section 304(g) of the Pennsylvania Mental Health Procedure Act (Tr. 52-54, 71-73, 162). *Id.*; *see* 50 P.S. §§ 7301 (relating to persons who may be subject to involuntary treatment); 7034 (relating to court-ordered involuntary treatment). Greist has remained confined in Norristown State Hospital since that time (Tr. 11, 52-54, 71-73, 83).[3] *See also In re R.G.*, 11 A.3d at 514 (noting that Greist was involuntarily committed to Norristown Hospital for one year under Section 7304 and has been recommitted each subsequent year); *Greist v. Norristown State Hosp.*, No. 96-CV-8495, 1997 WL 661097, at *1 (E.D. Pa. Oct. 22, 1997); *In re Greist*, 636 A.2d at 194 (explaining that the court continued to maintain

---

convey any suggestion or inference regarding any purported criminal tendencies of Plaintiff.

[3] Plaintiff was discharged from Norristown State Hospital on or about August 2, 2022, one month after the Acting Commissioner filed her brief, and is no longer committed. (Reply, ECF No. 33, at 25).

> Greist's commitment because his condition continued to pose a serious danger to the community). The Commonwealth of Pennsylvania bears the expense of Greist's hospitalization (Tr. 83, 100).
>
> After the state court proceedings leading to Greist's commitment and based on a 1979 application, the Social Security Administration awarded Greist disability insurance benefits based on a mental disability commencing in May 1978 (Tr. 11; 18-19 Pl.'s Br. at Ex. 1). Greist received disability benefits until they were suspended in February 1995 pursuant to legislation enacted by Congress in 1994 (Tr. 11, 83; Pl.'s Br. at Ex. 2).
>
> Greist initially challenged the suspension of his benefits in 1995 (Tr. 11, 69, 74, 79). Greist then renewed his challenge by seeking reconsideration again in 2017, which the Agency denied in March 2018 (Tr. 97, 99-101). In May 2018, Greist requested a hearing before an ALJ (Tr. 102). Greist appeared and testified at a hearing before an ALJ on February 22, 2019 (Tr. 14-51). On April 29, 2019, the ALJ issued a decision finding that Greist's Title II benefits were properly suspended (Tr. 11). Greist requested review, which the Appeals Council denied (Tr. 1-5). This appeal followed.

(Resp., ECF No. 30, at 2-4).

Plaintiff initiated this matter on October 13, 2020, with the filing of a letter-motion for an extension of time to file a Social Security complaint, followed by an "amended" complaint on November 25, 2020. (Mot. for Ext., ECF No. 1; Am. Compl., ECF No. 7). On December 4, 2020, Plaintiff consented to my jurisdiction pursuant to 28 U.S.C. § 636(C). (Consent Order, ECF No. 11). He then filed identical "Expansions of Issues Under Amended Complaint of November 25, 2020" on November 5 and 12, 2021. (Expansions of Issues, ECF No. 20-21). On May 2, 2022, Plaintiff filed his supporting brief, on July 1, 2022, the Acting Commissioner filed her response, and on August 10, 2022, Plaintiff filed a reply.[4] (Pl.'s Br., ECF No. 27;

---

[4] Bruce L. Castor, Esquire, has also filed two motions for leave to file an *amicus curiae* brief on Plaintiff's behalf. (First Mot. to File Amicus, ECF No. 34; Sec. Mot. to File Amicus, ECF No. 37). These motions are addressed in a separate Order filed concurrently with this

3

Resp., ECF No. 30; Reply, ECF No. 33).

## II.     ALJ'S DECISION

The ALJ's decision reads:

> The record shows the claimant, born May 20, 1951, committed very serious crimes in 1978 including but not limited to the killing of his pregnant wife, but was found in a 1980 Pennsylvania Court proceeding not guilty by reason of insanity and committed to the Norristown State Hospital for psychiatric treatment (Exhibit 4, 1). . . .
>
> Based on an application filed May 8, 1984, the claimant was awarded social security disability benefits based on a finding of mental based disability commencing May 18, 1978. His benefits were later suspended, pursuant to legislation enacted in 1995 (Exhibit 7). He is appealing the suspension of benefits (Exhibit 21).
>
> The claimant's disability benefits were appropriately suspended pursuant to a 1995 legislative change, providing that individuals hospitalized due to a verdict of not guilty of a criminal offense by reason of insanity would no longer be eligible for Title II disability benefits. He contends that he should continue to receive benefits because he should not be subject to legislation enacted after the benefits were awarded, but there is no provision in the law supporting this position. In accordance with section 202(x)(l)(A) of the Social Security Act [42 U.S.C. § 402(x)(1)(A)] and POMS Part GN 02607.310, his benefits were properly suspended and must remain so under the law.

(R. 11).

## III.    LEGAL STANDARD

Judicial review of a final decision of the Commissioner is limited.  A district court is bound by the factual findings of the Commissioner if they are supported by substantial evidence

---

Memorandum.

and decided according to correct legal standards.  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence is "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate."  *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000) (citations omitted).  The court has plenary review of legal issues.  *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

IV.   DISCUSSION

Pursuant to a 1994 amendment that took effect in 1995, Congress amended 42 U.S.C. § 402 to provide that "no monthly benefits shall be paid . . . to any individual" who "is confined by court order in an institution at public expense in connection with . . . a verdict or finding that the individual is not guilty of such an offense by reason of insanity."  42 U.S.C. § 402(x)(1)(A)(ii).  The report from the House Committee on Ways and Means, to whom the proposed amendment had been referred, explained the logic behind the change:

> Social Security is intended to replace earnings and provide basic income for food, clothing, and shelter to workers who retire or become disabled. Individuals who have been committed to an institution pursuant to committing a crime are already relying on public funds to cover the costs of their basic living expenses. It is particularly inequitable that, in some instances, criminally insane individuals so institutionalized receive higher benefits than their victims or their victims' survivors.
>
> . . . .
>
> In making these changes, the Committee is seeking to establish greater consistency in the policy that Congress enacted in 1980 banning Social Security benefit payments to incarcerated felons. That limitation recognizes that prisoners receive full support from public resources in the form of food, clothing, lodging, and basic health care. In the Committee's view, the same situation exists in the case of criminally insane individuals who are confined to institutions at public expense.

H.R. Rep. No. 103-491 (1994), 1994 U.S.C.C.A.N. 3266, 3268, 3273.

Here, the ALJ determined that Plaintiff's disability benefits were appropriately suspended because he was found not guilty of his crimes due to his insanity. (R. 11). Although Greist asserts that the Acting Commissioner focuses on this fact "so as to more easily fit [her] reliance" on Section 402(x)(1)(A)(ii), Plaintiff cannot reasonably dispute that the basis for his not guilty verdict was his insanity, and that in connection with this verdict he was confined to an institution at public expense. *See Greist*, 636 A.2d at 194 ("After a bench trial, Greist was found not guilty by reason of insanity. The court thereafter ordered Greist to serve a one-year involuntary commitment for psychiatric treatment in Hospital pursuant to the Mental Health Procedures Act, 50 Pa.S.A. § 7304."); (R. 52-54, 62, 68, 71-73, 162).

Instead, Plaintiff raises three challenges to the suspension of his benefits: (1) that it was the product of prohibited retroactive rulemaking; (2) that it was unconstitutional; and (3) and that it violated the Rehabilitation Act.

### A.  Retroactive Rulemaking

#### 1.  The Parties' Positions

Plaintiff's first and most extensive argument is that the SSA improperly engaged in "retroactive rulemaking" when it suspended his benefits pursuant to § 402(x)(1)(A)(ii). (Am. Compl.,[5] ECF No. 7, at 5-6; Pl.'s Br., ECF No. 27, at 6-14; Reply, ECF No. 33, at 5-13). He observes that the SSA may only promulgate retroactively effective rules when expressly authorized by Congress and that the Administrative Procedures Act (APA) otherwise prohibits enacting rules that apply retroactively. (Pl.'s Br., ECF No. 27, at 5-10). He argues that any reliance by the SSA on its Program Operations Manual System (POMS) is misplaced because it

---

[5] Plaintiff has incorporated by reference the arguments made in his earlier filings into the briefing presently before the Court. (Reply, ECF No. 33, at 5).

may grant only greater, not lesser, rights than those provided for in the Social Security regulations. (*Id.* at 10-14). Specifically, he argues that POMS is inconsistent with 20 C.F.R. § 404.468, precluding payments of benefits to inmates incarcerated pursuant to a felony conviction, and 20 C.F.R. §§ 404.987-99, regarding reopening disability determinations. (Am. Compl., ECF No. 7, at 3-5; Pl.'s Br., ECF No. 27, at 10, 13-14). He claims that *res judicata* prohibits the reopening of his grant of benefits without following these regulations. (Am. Compl., ECF No. 7, at 4).

The Acting Commissioner counters that Greist's entire argument is off-base because in suspending his benefits the SSA directly relied upon a provision of the Social Security Act, specifically 42 U.S.C. § 402(x)(1)(A)(ii), not an agency regulation or rule or POMS, and that, absent a constitutional violation,[6] Congress may enact *legislation* that has a retroactive impact. (Resp., ECF No. 30, at 6). Similarly, it notes that the APA only prohibits retroactive rulemaking by *executive* agencies, not congressional ones like the SSA. (*Id.* at 7-8). It further points out that, in any event, the statutory provision at issue only applies prospectively to benefits not yet paid, not those paid previously, as reflected in the fact that the SSA has not sought disgorgement of the benefits paid to Plaintiff prior to the effective date of the amendment. (*Id.* at 7 (citations omitted)). It therefore concludes that Plaintiff's benefits were properly suspended. (*Id.* at 5 (citing *Artz v. Barnhart*, 330 F.3d 170 (3d Cir. 2003)).

Plaintiff replies that *Artz* was wrongly decided inasmuch as it permitted the SSA to engage in retroactive application without express authorization from Congress. (Reply, ECF No. 33, at 5). He also attempts to distinguish that case on the grounds that Artz, unlike Plaintiff, was

---

[6] Plaintiff's separate argument that the suspension of his disability benefits violates his constitutional rights is addressed in the next section. *See, infra,* § IV.B.

re-confined after conditional release. (*Id.* at 6). According to Plaintiff, if Artz had been confined pursuant to "normal civil commitment procedures," "it is more-likely-than-not" that the Third Circuit would have reinstated his benefits. (*Id.*). He concedes that the amendment establishing the current language of § 402(x)(a)(A)(ii) is "prospective" but nonetheless maintains that the SSA's reliance on the provision's "in connection with" phrase demonstrates that the SSA has in practice engaged in prohibited retroactive rulemaking because the verdict at issue occurred prior to the effective date of the amendment. (*Id.* at 7-9). He also contends that the benefits suspension violates the SSA's own regulations regarding the reopening of disability determinations because it occurred without the issuance of a written "Notice of Reopening." (*Id.* at 9-10 (citing *Wyatt v. Barnhart*, 349 F.3d 983 (7th Cir. 2003))). Further, he argues that the regulations trump any rules promulgated via POMS and that the SSA may not rely on the Social Security Act to the exclusion of its regulations. (*Id.* at 10-13 (citing *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019))).

    **2.**    **Discussion**

  The SSA's suspension of Plaintiff's disability benefits was done neither pursuant to any "rulemaking" nor "retroactively." Rather, correspondence from the SSA to Plaintiff clearly indicates that his benefits were suspended "under Title II of the Social Security Act as amended" in 1994, making the applicability of the APA's prohibition against retroactive rulemaking irrelevant. (R. 84). The ALJ also referenced this statutory basis for the suspension in his decision. (R. 11 (citing 42 U.S.C. § 402(x)(l)(A))). Moreover, courts have repeatedly held that a suspension of benefits pursuant to § 402(x)(1)(A) is *prospective*, not retrospective. *See John T. v. Saul*, 513 F. Supp. 3d 1032, 1039 (C.D. Ill. 2021) (finding that the provision is "prospective" because "it applies to benefits to be paid out after the date of the Act's enactment"); *Dawley v. Barnhart*, No. 05-11440-GAO, 2006 WL 2085976, at *2 (D. Mass. July 26, 2006) (finding that

8

the plaintiff's "claim that the statute was retroactively applied to him also lacks merit" because his "benefits were prospectively suspended after the prescribed effective date of the relevant provision"). Tellingly, as the Acting Commissioner notes, the SSA only suspended Plaintiff's future benefits and did not seek reimbursement of benefits already paid. (R. 84).

Turning to Plaintiff's remaining arguments, this Court rejects the suggestion that it should not follow *Artz* because it improperly permitted retroactive rulemaking without express congressional authorization. (Reply, ECF No. 33, at 5). On the contrary, courts within and outside this circuit, including the Third Circuit Court of Appeals itself, have continued to rely on *Artz*'s holding that a court-ordered commitment at public expense "in connection with" an earlier verdict of not guilty by reason of insanity (NGRI) precludes the payment of disability benefits during the commitment. *See Bierley v. Barnhart*, 188 F. App'x 117, 120 (3d Cir. 2006) (citing *Artz*); *Bolus v. Saul*, No. 3:19-cv-00269-MWB-GBC, 2020 WL 5033574, at *4 (M.D. Pa. July 21, 2020) (same); *Kalman v. Astrue*, No. 3:07CV944, 2008 WL 2622784, at *12 (D. Conn. June 26, 2008) (same). Further, the fact that Artz was re-confined after a conditional release following his initial NGRI verdict, yet the Third Circuit concluded that his re-confinement was nonetheless "in connection with" the verdict, cuts *against* Plaintiff's argument. *See Artz*, 330 F.3d at 175-76. Plaintiff's commitment lacked even this measure of attenuation; instead, following his NGRI verdict, he was committed to Norristown State Hospital and remained there until his recent release. (Tr. 52-54, 71-73, 162).

Plaintiff also claims that the SSA and Acting Commissioner improperly rely upon 42 U.S.C. § 402(x)(l)(A)(ii) to the exclusion of 20 C.F.R. §§ 404.468, 404.987-99. (Reply, ECF No. 33, at 11-13). In related arguments, he also argues that any reliance[7] upon POMS is

---

[7] Neither the SSA in its correspondence with Plaintiff, nor the Acting Commissioner in its responsive brief, relied upon POMS as a basis for suspending Plaintiff's benefits. (R. 84,

9

improper because it conflicts with these regulations and that *res judicata* prohibits reopening his award of benefits without following these regulations. (Am. Compl., ECF No. 7, at 3-5; Pl.'s Br., ECF No. 27, at 10, 13-14). However, the regulations cited by Plaintiff do not apply. Plaintiff alleges in his amended complaint that 20 C.F.R. § 404.468 has not been amended following the amendment to 42 U.S.C. § 402 to reference "NGRI, Not Criminally Responsible or any other reference to a mental disorder." (Am. Compl., ECF No. 7, at 3). But this regulation pertains to inmates confined "for conviction of a felony" and therefore does not apply to Plaintiff. 20 C.F.R. § 404.468(a). Similarly, 20 C.F.R. §§ 404.987-99 are irrelevant because they set forth requirements for reopening and revising individualized determinations and decisions made during the administrative review process, not procedures for suspending benefits pursuant to a congressional amendment of the underlying statutory prerequisites for disability benefits.[8] 20 C.F.R. §§ 404.987-99. As Plaintiff succinctly puts it in the first paragraph of his opening brief, "[t]he issue before the Court is not . . . whether Plaintiff continues to be disabled." (Pl.'s Br., ECF No. 27, at 1).

Finding no merit in Plaintiff's argument that the SSA improperly engaged in prohibited retroactive rulemaking, the Court declines to remand this matter on the proffered basis.

---

100-01; *see generally* Resp., ECF No. 30). Presumably Plaintiff raises this issue because the ALJ in his decision cited the POMS section that explains how the SSA will implement § 402(x)(1)(A)(ii) alongside his citation to that statutory provision. (R. 11).

[8] Plaintiff's cited cases are distinguishable for the same reason. In *Kisor* and *Wyatt*, the claim was reopened, respectively, at the ALJ's behest and the claimant's request to revisit the disability determination, not because a statutory change had changed the eligibility status of the claimant. *Kisor*, 139 S. Ct. at 2409; *Wyatt*, 349 F.3d at 984.

B. **Constitutional Challenges**

1. **The Parties' Positions**

Plaintiff posits that the suspension of his benefits was unconstitutional because it constituted a bill of attainder, an *ex post facto* law, double jeopardy, a deprivation of property without due process and a violation of equal protection. (Am. Compl., ECF No. 7, at 2-4; Pl.'s Br., ECF No. 27, at 15). In her response, the Acting Commissioner cites several cases rejecting the arguments made by Plaintiff. (Resp., ECF No. 30, at 8 (citations omitted)). In his reply, Plaintiff appears to pivot to an "as-applied" argument that although the constitutionality of the 42 U.S.C. § 402(x)(1)(A)(ii) was "never in question," the "Application of the Statute by the Agency" was unconstitutional. (Reply, ECF No. 33, at 14). He also repeats his arguments, rejected in the prior section, that his benefits award was reopened in violation of the SSA's own regulations and the APA. (*Id.* at 14-16). He devotes the remainder of his brief to arguing that he had a property interest in his disability benefits, such that the suspension of them without due process constituted a constitutional violation. (*Id.* at 16-17 (citing *Flemming v. Nestor*, 363 U.S. 603, 633-37 (1960) (dissenting opinions))).

2. **Discussion**

Circuit courts have repeatedly rejected similar constitutional challenges to § 402(x). *See Langella v. Gov't of United States*, 6 Fed. App'x 116, 117 (2d Cir. 2001) ("Langella claims that 42 U.S.C. § 402(x) violates the Due Process and Equal Protection Clauses of the Fifth Amendment, and constitutes an *ex post facto* law, and a bill of attainder. These claims are meritless."); *Milner v. Apfel*, 148 F.3d 812, 815 (7th Cir. 1998) (§ 402(x) survives rational basis review under the Equal Protection clause); *Butler v. Apfel*, 144 F.3d 622, 625-26 (9th Cir. 1998) (holding that 42 U.S.C. § 402(x) is consistent with the Due Process, Equal Protection, Bill of Attainder, and Ex Post Facto clauses); *Davis v. Bowen*, 825 F.2d 799, 800-01 (4th Cir. 1987)

("Several circuits have upheld the constitutionality of Section 402(x) and its predecessor 423(f) against a variety of challenges," including due process, equal protection, *ex post facto*, and Eighth Amendment challenges); *Wiley v. Bowen*, 824 F.2d 1120, 1122 (D.C. Cir. 1987) (finding that Section 402(x) is not an *ex post facto* law); *Caldwell v. Heckler*, 819 F.2d 133, 134 (6th Cir. 1987) (same); *Andujar v. Bowen*, 802 F.2d 404, 405 (11th Cir. 1986) ("We hold that § 402(x)(1) is constitutional—we find no violation of due process, no punishment without trial, and no bill of attainder or *ex post facto* law."); *Peeler v. Heckler*, 781 F.2d 649, 651-52 (8th Cir. 1986) (same); *Zipkin v. Heckler*, 790 F.2d 16, 19-20 (2d Cir. 1986) (rejecting due process challenge); *Jones v. Heckler*, 774 F.2d 997, 998-99 (10th Cir. 1985) ("the statute challenged here does not constitute a bill of attainder nor an *ex post facto* law"); *Jensen v. Heckler*, 766 F.2d 383, 385-86 (8th Cir. 1985) (rejecting due process, equal protection, *ex post facto* and bill of attainder challenges).

Despite this body of case law, Plaintiff maintains that he had a property interest in his disability benefits and that their suspension constituted a punishment, resulting in constitutional violations. (Am. Compl., ECF No. 7, at 3; Reply, ECF No. 33, at 16-18). Although Plaintiff does not identify the alleged violations, based on the cases he cites, the Court construes his argument to be that the suspension of benefits without process constituted a violation of the Fifth Amendment's Due Process Clause, an *ex post facto* law and a bill of attainder. (Reply, ECF No. 33, at 17-18 (citing cases referencing such constitutional violations)). For the reasons below, the suspension was none of these things.

In *Flemming v. Nestor*, the United States Supreme Court explained in the context of a termination of Social Security benefits: "Particularly when we deal with a withholding of a noncontractual benefit under a social welfare program such as this, we must recognize that the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification." 363 U.S. 603, 611 (1960).

However, as several circuit courts have observed in regard to § 402(x), "[t]here is nothing irrational about Congress's stated goal of conserving social security resources, and Congress can incrementally pursue that goal." *Butler*, 144 F.3d at 625 (rejecting due process and equal protection challenges based on the argument that the justification for the statute is "false because § 402(x) treats prisoners differently from other social security beneficiaries") (citing cases from the Second, Fourth, Eighth, Tenth and Eleventh Circuit Courts of Appeals).

Plaintiff takes issue with the Supreme Court's description of Social Security in *Flemming* and asserts that the program is instead more properly viewed "as a unilateral contract initiated by Congress under its legislative authority." (Reply, ECF No. 17, at 16-17). However, Plaintiff offers no support for this view, nor could this Court locate any. He then cites to *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) and *Dugan v. Sullivan*, 957 F.2d 1384 (7th Cir. 1992) for the proposition that an individual receiving Social Security benefits has a property interest in their continued receipt such that due process is required. (*Id.* at 17). However, these cases involved the termination of benefits pursuant to an individualized determination following a reopening of the recipient's disability claim as part of the administrative process, not a wholesale change in the underlying statutory requirements to receive benefits. *Mathews*, 424 U.S. at 324; *Dugan*, 957 F.3d at 1386; *cf., supra*, § IV.A.2. Accordingly, the recipients in these cases were entitled to the procedural safeguards provided for in the regulations. *Mathews*, 424 U.S. at 349 (holding that the administrative procedures set forth in the regulations "fully comport with due process"); *Dugan*, 957 F.3d at 1388-89 (holding that reopening a recipient's disability determination without meeting the requirements of 20 C.F.R. §§ 404.987-99 is prohibited by *res judicata*). Here, however, the SSA was not required to follow the steps set forth in the cited regulations for every benefits recipient affected by the 1994 amendment.

Nor is 42 U.S.C. § 402(x) a bill of attainder or an *ex post facto* law, both of which require that the statute constitute a punishment against the plaintiff. *See LuLu Shriners v. Twp. of Whitemarsh*, 557 F. Supp. 3d 593, 603 (E.D. Pa. 2021) ("A bill of attainder is a 'law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial.'") (quoting *Nixon v. Admin. of Gen. Servs.*, 433 U.S. 425, 468 (1977)); *Souch v. Schaivo*, 289 F.3d 616, 620 (9th Cir. 2002) (defining an *ex post facto* law as "any law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed") (quotation omitted); *see also Casalvera v. Comm'r of Soc. Sec.*, 998 F. Supp. 411, 414 n.1 (D. Del. 1998) ("The Court Appeals for the Third Circuit has concluded that the definition of 'punishment' is the same for purposes of both the Ex Post Facto Clause and the Double Jeopardy Clause.") (citing *Artway v. Att'y Gen. of State of N.J.*, 81 F.3d 1235, 1253 (3d Cir. 1996)). Plaintiff quotes from *Flemming* for the proposition that "the deprivation of benefits as provided in the amendment is in the nature of a penalty," but his argument is misplaced for at least two reasons. (Reply, ECF No. 33, at 17 (quoting *Flemming*, 363 U.S. at 633-37)). First, "the amendment" referenced in *Flemming* is not § 402(x) but *§ 402(n)*, a wholly separate provision dealing with the termination of social security benefits to certain alien deportees. 363 U.S. at 604-05. Second, Plaintiff relies upon two *dissenting* opinions in *Flemming*. (Reply, ECF No. 33, at 17-18 (quoting *Flemming*, 363 U.S. at 633-37)). The majority opinion, in fact, *rejected* the claim that the separate statutory provision at issue in that case worked an unconstitutional punishment. *Id.* at 618-21. Courts considering § 402(x) have similarly held that it does not constitute a punishment. *Davis*, 825 F.2d at 800 ("we note with approval that the Tenth and Eighth Circuits have upheld the suspension of disability benefits [under § 402(x) and its predecessor] against similar challenges, finding that the suspension is not punishment") (citations omitted).

Presented with the obvious facial constitutionality of § 402(x), Plaintiff in his reply suggests that the provision is unconstitutional as applied by the SSA.  (Reply, ECF No. 33, at 14-15).  To succeed on an as-applied constitutional challenge, a plaintiff must show that a law's "application to a particular person under particular circumstances deprived that person of a constitutional right."  *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010).  Here, Plaintiff appears to argue that the SSA's application of § 402(x) is unconstitutional because it conflicts with the APA and its own regulations, presumably those previously referenced by him, 20 C.F.R. §§ 404.468, 404.987-99.  However, as explained in the preceding section, these authorities do not apply here.  Plaintiff contends only that the APA prohibits retroactive *rulemaking*, whereas his suspension of benefits occurred pursuant to a statutory change.  (R. 11, 84).  Additionally, 20 C.F.R. § 404.468 applies only to incarcerated felons, and 20 C.F.R. §§ 404.987-99 set forth requirements for reopening and revising individualized determinations and decisions made during the administrative review process, which is not what occurred in this case.  Thus, Plaintiff's as-applied challenge fails as well.

     **C.**     **Rehabilitation Act**

          **1.**     **The Parties' Positions**

Plaintiff's final argument is that "SSA suspension of benefits for a mental health acquittee violates the Rehabilitation Act."  (Expansions of Issues, ECF Nos. 20-21, at 2-9; Pl.'s Br., ECF No. 27, at 15-17; Reply, ECF No. 33, at 19-25).  He repeats his contentions, rejected above, that the trial court acquitted him because it found him "not criminally responsible" rather than NGRI and that Congress and the SSA are improperly punishing him although he has not been convicted of any crime.  (Expansions of Issues, ECF Nos. 20-21, at 2-4, 8 (citing *Foucha v. Louisiana*, 504 U.S. 71 (1992)); Pl.'s Br., ECF No. 27, at 15).  He claims that an exception to the prohibition against paying disability benefits to incarcerated felons exists for those in approved

rehabilitation programs. (Expansions of Issues, ECF Nos. 20-21, at 5, 9 (citing 20 C.F.R. § 404.468(d); Pl.'s Br., ECF No. 27, at 15)). He quotes the Rehabilitation Act's nondiscrimination provision, related regulations and the Social Security Act's provision regarding designation of representative payees for benefits due qualified World War II veterans and questions why the SSA did not similarly designate his wife "as an alternate or representative payee with reporting responsibilities," which Plaintiff claims would have brought the SSA "in compliance" with both 42 U.S.C. § 402(x)'s suspension of "direct payments" while also "complying with the anti-discrimination mandate under the Rehabilitation Act." (Expansions of Issues, ECF Nos. 20-21, at 4-9 (citations omitted); Pl.'s Br., ECF No. 27, at 15 (citations omitted)).

The Acting Commissioner counters that Plaintiff cannot show that his benefits were suspended solely because of his disability as required for a violation of the Rehabilitation Act. (Resp., ECF No. 30, at 11 (citations omitted)). She contends that Plaintiff's cited exception permitting disability benefits to incarcerated felons participating in rehabilitation programs was eliminated as part of the 1994 amendment, prior to his February 1995 suspension of benefits. (*Id.* at 12 (citation omitted)). Further, she observes that Plaintiff's argument that his wife should have been designated as a representative payee disregards the legislative intent behind the suspension, that is, to prevent payment of benefits where someone is already provided for at public expense. (*Id.* (citation omitted)).

Plaintiff claims that the Acting Commissioner's Rehabilitation Act cases are distinguishable because their facts were "not related to benefit suspension . . . ." (Reply, ECF No. 33, at 19-20). He maintains that his benefits were suspended solely due to his disability and that the congressional record reflecting a desire to limit consumption of scarce Social Security resources by those the state is already providing for is mere "dicta utilized specifically to circumvent Constitutional Protections . . . ." (*Id.* at 21 (citing *Flemming*, 363 U.S. at 636, 640

(dissenting opinions))). He maintains that 20 C.F.R. § 416.645 permits him to receive benefits through a representative payee but that the SSA repeatedly refused his and his wife's attempt to establish her as the payee, citing his confinement. (*Id.* at 21-22). Plaintiff instead attributes the refusal to discrimination based on his disability. (*Id.* at 23). He contends that the SSA's failure to follow its rules and regulations inflicted harm on him and his creditors, notwithstanding the allegedly nonpunitive basis for the benefits suspension, because he has had to file for bankruptcy protection and let some of his Medicare coverage lapse. (*Id.*).

### 2. Discussion

The Rehabilitation Act requires plaintiffs to show that: "(1) they are handicapped or disabled as defined under the statute[ ]; (2) they are otherwise qualified to participate in the program at issue; and (3) they were precluded from participating in a program or receiving a service or benefit because of their disability." *CG v. Pa. Dep't of Educ.*, 734 F.3d 229, 235 (3d Cir. 2013) (citation omitted). The third element "'requires disability to be the sole cause of discrimination,' which means 'an alternative cause is fatal to a[ ] [Rehabilitation Act] claim because disability would no longer be the sole cause.'" *McDonald-Witherspoon v. City of Phila.*, No. 21-1019, 2021 WL 6101246, at *3 (3d Cir. Dec. 21, 2021) (quoting *CG*, 734 F.3d at 236 n.11).[9] Here, the legislative history of 42 U.S.C. § 402(x) reflects that Congress suspended the benefits of "criminally insane individuals who are confined to institutions at public expense" not out of discriminatory animus but because they "are already relying on public funds to cover the

---

[9] Plaintiff claims that *CG* and *McDonald-Witherspoon* are distinguishable because they did not involve suspension of benefits, as in this case. (Reply, ECF No. 33, at 19-20). However, the requirements to state a claim under the Rehabilitation Act set forth in these cases clearly apply to not only "participating in a program" but also "receiving a service *or benefit* . . . ." *CG*, 734 F.3d at 235 (emphasis added); *McDonald-Witherspoon v. City of Phila.*, No. 21-1019, 2021 WL 6101246, at *3 (same).

costs of their basic living expenses" and because it would be "particularly inequitable" for them, in some instances, to receive greater benefits than their victims or their victims' survivors.[10] H.R. Rep. No. 103-491 (1994), 1994 U.S.C.C.A.N. 3266, 3268, 3273.  This "alternative cause" is fatal to Plaintiff's claim, and Plaintiff's contention that he was unable to pay his bills or maintain a portion of his Medicare benefits does not establish that Congress's true intent in amending the statute was to punish.  *See CG*, 734 F.3d at 236 n.11.

Plaintiff cites various statutory and regulatory provisions in support of his claim, but none of them salvage it.  20 C.F.R. § 404.468 provides for payment of benefits to those confined "for conviction of a felony" if the individual "is actively and satisfactorily participating in a rehabilitation program which has been specifically approved for the individual by court of law" and the Commissioner "determine[s] that the program is expected to result in the individual being able to do substantial gainful activity upon release and within a reasonable time."  20 C.F.R. § 404.468(a), (d).  Plaintiff has not met these conditions.  He also contends that his wife should have been designated as a representative payee pursuant to 42 U.S.C. § 1007 and/or 20 C.F.R. § 416.645.  However, Plaintiff's contention ignores his underlying ineligibility for benefits while incarcerated, which precluded him from receiving them in the first instance, let alone a representative or designee receiving them on his behalf.  42 U.S.C. § 402(x)(1)(A)(ii).

---

[10] Plaintiff dismisses this statement of the intention behind the 1994 amendment as nonbinding and as nothing more than an attempt to cloak the statute's unconstitutionality, but in support of this position he again relies upon the dissenting opinions in *Flemming*, a case in which the Supreme Court *rejected* a constitutional challenge to a *different* provision of the Social Security Act.  *See* 363 U.S. at 620-21.  He also cites *Foucha v. Louisiana* to suggest that the suspension of his Social Security benefits constitutes a punishment, notwithstanding the alternative rationale provided by Congress, but the issue in that case was the constitutionality of a state statute that permitted an insanity acquittee to remain committed to a mental institution even though he was no longer insane, not whether any suspension of the individual's Social Security benefits constituted an improper punishment.  504 U.S. at 71-72.

Further, 42 U.S.C. § 1007 applies only to benefits owed to World War II veterans meeting certain additional conditions. *See* 42 U.S.C. § 1002.

Accordingly, this Court declines to remand this matter on the basis of a purported violation of the Rehabilitation Act.

## V. CONCLUSION

For the reasons set forth above, Plaintiff's request for review is **DENIED**. An appropriate Order follows.

BY THE COURT:

/s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge